1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MALIBU MEDIA, LLC, a California corporation,

Plaintiff,

v.

JOHN DOES 1 through 35,

Defendants.

Civil No.   12-cv-1135-LAB (DHB)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

**[ECF No. 4]**

On May 15, 2012, Plaintiff Malibu Media, LLC filed a Motion for Leave to Serve Third Party Subpoena Prior to a Rule 26(f) Conference.  (Pl.'s Mot. Leave Serve Third Party Subpoena ("Motion"), ECF No. 4.)  Because no Defendant has been named or served, no opposition or reply briefs have been filed.  On June 8, 2012, the Court issued an order vacating the June 12, 2012 hearing on Plaintiff's Motion after finding the matter suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1).  (ECF No. 5.)  For the reasons discussed below, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.  PROCEDURAL HISTORY**

On May 9, 2012, Plaintiff filed a Complaint against John Does 1 through 35 ("Defendants").  (Compl., ECF No. 1.)  Plaintiff purports to have obtained the copyright registration, or applied to obtain

/ / /

/ / /

1   registration, for numerous adult entertainment movies.[1] (Compl. at ¶¶ 3, 13 and 48; Compl., Ex. B, ECF

2   No. 1-2.) First, Plaintiff alleges a claim for copyright infringement, stating that Defendants reproduced

3   and distributed Plaintiff's copyrighted works through the Internet without Plaintiff's authorization.

4   (Compl. at ¶¶ 49-51.)   Second, Plaintiff pleads contributory copyright infringement, alleging that

5   Defendants illegally obtained the copyrighted works and assisted others in doing the same. (Compl. at

6   ¶¶ 56-61.)

7       On May 15, 2012, less then one week after filing the Complaint, Plaintiff filed the instant Motion

8   in which Plaintiff seeks leave to take early discovery to learn the identities of the Doe Defendants from

9   their respective Internet Service Providers ("ISPs").   Specifically, Plaintiff seeks an order permitting

10  it to serve Rule 45 subpoenas on the third party ISPs and any related intermediary ISPs demanding the

11  true name, address, telephone number, e-mail address and Media Access Control ("MAC") address of

12  the Defendant to whom the ISP issued an Internet Protocol ("IP") address.   (Motion at 1:18-21.)

13  Plaintiff attached to its Motion a list of the IP addresses associated with the subscribers it hopes to

14  identify as Defendants.  (*See* Decl. Tobias Feiser ("Feiser Decl."), Ex. B., ECF No. 4-4.)

15              **II.  FACTUAL ALLEGATIONS**

16      In the Complaint, Plaintiff alleges that the thirty-five Doe Defendants collectively infringed its

17  copyrighted works using a BitTorrent file transfer protocol. (Compl. at ¶¶ 16-44.)  The Defendants are

18  purportedly a collection of "BitTorrent users" or "peers" whose computers are connected for the purpose

19  of sharing a file, otherwise known as a "swarm." (Compl. at ¶ 17 ("The BitTorrent protocol's popularity

20  stems from its ability to distribute a large file without creating a heavy load on the source computer and

21  network.  In short, to reduce the load on the source computer, rather than downloading a file from a

22  single source computer (one computer directly connected to another), the BitTorrent protocol allows

23  users to join a 'swarm' of host computers to download and upload from each other simultaneously (one

24  computer connected to numerous computers).").)

25  ────────────

26      [1] There is some confusion regarding the actual number of purported copyrighted movies that
    comprise the "Works" referred to in Plaintiff's Complaint.  For example, the Complaint states that the
27  copyrighted works consist of "57 movies contained on the subject website."  (Compl. at ¶ 3, ECF No.
    1.)  However, the Complaint also alleges that Plaintiff owns or has applied for copyright registration of
28  "16 of the 107 movies contained in the siterip."  (Compl. at ¶ 13.)  Further, the documents attached to
    the Complaint suggests that Plaintiff owns or has applied for copyright registration of 26 separate
    movies.  (Compl., Ex. B, ECF No. 1-2.)

Plaintiff alleges that following Defendants' unlawful infringement of its copyrighted works using the BitTorrent protocol and file-sharing "swarm," Plaintiff retained IPP, Limited ("IPP"), a computer forensic investigation firm, to identify the IP addresses being used to participate in the infringement. (Compl. at ¶ 38.)  Plaintiff further alleges that IPP utilized computer forensic software to determine that each Defendant copied a portion of Plaintiff's copyrighted works during the same series of transactions and that Defendants were identified by their IP addresses.  (Compl. at ¶¶ 39-44.)

### III.  LEGAL STANDARDS

Generally, discovery is not permitted without a court order before the parties have conferred pursuant to Federal Rule of Civil Procedure 26(f). Fed. R. Civ. P. 26(d)(1).  "[H]owever, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).  Requests for early or expedited discovery are granted upon a showing by the moving party of good cause.  *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002) (applying "the conventional standard of good cause in evaluating Plaintiff's request for expedited discovery").

"The Ninth Circuit has held that when the defendants' identities are unknown at the time the complaint is filed, courts may grant plaintiffs leave to take early discovery to determine the defendants' identities 'unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *808 Holdings, LLC v. Collective of December 29, 2011 Sharing Hash*, No. 12-cv-0186 MMA (RBB), 2012 U.S. Dist. LEXIS 62980, *7 (S.D. Cal. May 4, 2012) (quoting *Gillespie*, 629 F.2d at 642).  "A district court's decision to grant discovery to determine jurisdictional facts is a matter of discretion."  *Columbia Ins.*, 185 F.R.D. at 578 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

District courts apply a three-factor test when considering motions for early discovery to identify certain defendants.  *Id.* at 578-80. First, "the plaintiff should identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court."  *Id.* at 578.  Second, the plaintiff "should identify all previous steps taken to locate the

elusive defendant" to ensure that the plaintiff has made a good faith effort to identify and serve process on the defendant.  *Id.* at 579.  Third, the "plaintiff should establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss."  *Id.* (citing *Gillespie*, 629 F.2d at 642).  "[T]o prevent abuse of this extraordinary application of the discovery process and to ensure that the plaintiff has standing to pursue an action against defendant," plaintiff must show that some act giving rise to liability actually occurred and that the discovery is aimed at identifying the person who allegedly committed the act.  *Id.* at 579-80 (citing *Plant v. Various John Does*, 19 F. Supp. 2d 1316, 1321 n.2 (S.D. Fla. 1998)).

## IV.  ANALYSIS

Plaintiff seeks an order permitting it to subpoena three ISPs for documents and information sufficient to identify the subscribers of the assigned IP addresses listed in Exhibit B to declaration of Tobias Feiser filed in support of Plaintiff's Motion:  (1) Cox Communications; (2) Road Runner; and (3) Verizon Internet Services.  (Feiser Decl., Ex. B.)  Out of the thirty-five corresponding IP addresses listed in Exhibit B, thirty-two are located in this judicial district.  (Feiser Decl., Ex. B.)  However, three are located outside of this judicial district:  Doe 22 (Yucca Valley, California); Doe 34 (La Quinta, California); and Doe 35 (Hesperia, California).  (Feiser Decl., Ex. B.)

**A.** **Identification of Missing Parties with Sufficient Specificity**

First, Plaintiff must identify the Doe Defendants with enough specificity to enable the Court to determine that the defendant is a real person or entity who would be subject to the jurisdiction of this Court.  *Columbia Ins.*, 185 F.R.D. at 578.  This court has "determined that a plaintiff identifies Doe defendants with sufficient specificity by providing the unique IP addresses assigned to an individual defendant on the day of the allegedly infringing conduct, and by using 'geolocation technology' to trace the IP addresses to a physical point of origin."  *808 Holdings*, 2012 U.S. Dist. LEXIS 62980, at *10 (quoting *OpenMind Solutions, Inc. v. Does 1-39*, No. C-11-3311 MEJ, 2011 U.S. Dist. LEXIS 116552, at *5-6 (N.D. Cal. Oct. 7, 2011); *Pink Lotus Entm't, LLC v. Does 1-46*, No. C-11-02263 HRL, 2011 U.S. Dist. LEXIS 65614, at *6-7 (N.D. Cal. June 21, 2011)).

Here, Plaintiff submitted a chart listing the unique IP address corresponding to each Defendant on the dates and times of the purportedly infringing activity, as well as the city and state in which each

IP address is located.  (Feiser Decl., Ex. B.)  Consequently, Plaintiff has identified the Doe Defendants with sufficient specificity.  *See OpenMind Solutions*, 2011 U.S. Dist. LEXIS 116552, at *6 (concluding that plaintiff satisfied the first factor by identifying the defendants' IP addresses and by tracing the IP addresses to a point of origin within the State of California); *Pink Lotus Entm't*, 2011 U.S. Dist. LEXIS 65614, at *6 (same).

**B.     Previous Attempts to Locate Defendants**

Next, Plaintiff must describe all prior steps it has taken to identify the Doe Defendants in a good faith effort to locate and serve them.  *See Columbia Ins.*, 185 F.R.D. at 579.  In its Motion, Plaintiff describes the efforts it made to learn the IP addresses of each Doe Defendant. (Feiser Decl. at ¶¶ 13-21.) However, Plaintiff generally maintains that there are no other practical measures available to determine the actual identities of the Doe Defendants.  (Motion at 4:8-18.)  Indeed, Plaintiff asserts that the second factor is satisfied because "there is no other way for Plaintiff to obtain Defendants' identities, except by serving a subpoena on Defendants' ISPs demanding it."  (Motion at 4:16-17.)

Thus, Plaintiff appears to have obtained and investigated the available data pertaining to the alleged infringements in a good faith effort to locate each Doe Defendant.  *See Digital Sin, Inc. v. Does 1-5698*, No. C 11-04397 LB, 2011 U.S. Dist. LEXIS 128033, at *4-5 (N.D. Cal. Nov. 4, 2011); *OpenMind Solutions*, 2011 U.S. Dist. LEXIS 116552, at *5-6; *MCGIP, LLC v. Does 1-149*, 2011 U.S. Dist. LEXIS 85363, at *4-5 (N.D. Cal. Aug. 3, 2011); *Pink Lotus Entm't*, 2011 U.S. Dist. LEXIS 65614, at *6-7.

**C.     Ability to Withstand a Motion to Dismiss**

 "Finally, to be entitled to early discovery, [Plaintiff] must demonstrate that its Complaint can withstand a motion to dismiss." *808 Holdings*, 2012 U.S. Dist. LEXIS 62980, at *13 (citing *Columbia Ins.*, 185 F.R.D. at 579).

In its Motion, Plaintiff declares that it has stated a prima facie claim for copyright infringement that can withstand a motion to dismiss.  (Motion at 3:15-4:5.)  According to Plaintiff, it has adequately alleged that Defendants engaged in the unauthorized reproduction and distribution of Plaintiff's copyrighted works, and that Plaintiff owns the registered copyrights for the works.  (Motion at 3:15-4:5 (citing 17 U.S.C. § 106; *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003)).)  Plaintiff

1  also supports its allegations of infringement with the declaration of Plaintiff's forensic investigator.

2  (Motion at 4:1-4.)

3  **1.    Improper Venue**

4    Plaintiff's Complaint and Motion make clear that three of the potential thirty-five Doe

5  Defendants are located outside of this judicial district.  (*See* Compl., Ex. A; Feiser Decl., Ex. B.)  One

6  IP address is located in Yucca Valley, California; one is located in La Quinta, California; and one is

7  located in Hesperia, California.  (*See* Compl., Ex. A; Feiser Decl., Ex. B.)  At a minimum, there is a

8  serious question as to whether the claims against these three Doe Defendants can survive a motion to

9  dismiss for improper venue.

10    Plaintiff alleges that venue in this judicial district is proper as to all Defendants under 28 U.S.C.

11  § 1391(b) and (c) because "(i) a substantial part of the events or omissions giving rise to the claims

12  occurred in this District; and (ii) a Defendant resides (and therefore can be found) in this District and

13  all of the Defendants reside in this State."  (Compl. at ¶ 7.)  However, "[t]he venue of suits for

14  infringement of copyright is not determined by the general provision governing suits in the federal

15  district courts, rather by the venue provision of the Copyright Act." *Goldberg v. Cameron*, 482 F. Supp.

16  2d 1136, 1143 (N.D. Cal. 2007) (citing 28 U.S.C. § 1400(a); *Lumiere v. Mae Edna Wilder, Inc.*, 261

17  U.S. 174, 176 (1923)).

18    Plaintiff also alleges that venue is proper in this judicial district under 28 U.S.C. § 1400(a)

19  "because each Defendant or each Defendant's agent resides or may be found in this District."  (Compl.

20  at ¶ 7.)  "In copyright infringement actions, venue is proper 'in the district in which the defendant or his

21  agent resides or may be found.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128

22  (9th Cir. 2010) (quoting 28 U.S.C. § 1400(a)).  "The Ninth Circuit interprets this statutory provision to

23  allow venue 'in any judicial district in which the defendant would be amendable to personal jurisdiction

24  if the district were a separate state.'" *Id.*  (quoting *Columbia Pictures Television v. Krypton Broad. of*

25  *Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1994)).  Thus, in order to determine whether Plaintiff's

26  Complaint could withstand a motion to dismiss for improper venue, the Court must consider whether

27  Does 22, 34 and 35 would be subject to personal jurisdiction in this judicial district if it were a separate

28  state.

As an initial matter, Plaintiff does not argue that Does 22, 34 and 35 would be subject to general jurisdiction in this district.  In fact, Plaintiff alleges that, based on their IP addresses, these three Defendants are domiciled in the Central District of California.  (Compl., Ex. A.)  Moreover, Plaintiff has not demonstrated that these three Defendants have engaged in "continuous and systematic" contacts with this district.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

Therefore, the only issue is whether the Court would have specific jurisdiction over Does 22, 34 and 35 if this judicial district were a separate state.  The Ninth Circuit employs a three-prong test to determine whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  "The plaintiff bears the burden of satisfying the first two prongs of the test."  *Id.*  "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum."  *Id.*  Because the Court finds that Plaintiff cannot make a prima facie showing that it can satisfy the first prong, as discussed below, the Court need not address the second or third prong.

The first prong of the three-part *Schwarzenegger* test looks at whether a defendant "purposefully availed itself of the privilege of conducting activities in [the forum], or purposefully directed its activities toward [the forum]."  *Id.* at 802.  The Ninth Circuit has explained that "purposeful direction" is the proper analytical framework for claims of copyright infringement, which are often characterized as a tort.  *Brayton Purcell*, 606 F.3d at 1128.  Courts evaluate "purposeful direction using the three-part '*Calder*-effects' test," derived from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).  *Id.*  Under this test, "the defendant allegedly [must] have (1) committed an intentional act, (2)

1   expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered

2   in the forum state." *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food Co. v. Watts, Inc.*, 303 F.3d

3   1104, 1111 (9th Cir. 2002)).

4                              i.      *Intentional Act*

5        The "intentional act" element of the *Calder*-effects test is "easily satisfied" in a copyright

6   infringement case. *See Brayton Purcell*, 606 F.3d at 1128. Plaintiff alleges that Defendants engaged

7   in the intentional act of copyright infringement. (Compl. at ¶¶ 52, 62.) Accordingly, the first element

8   of the *Calder*-effects test is met in this case.

9                              ii.     *Express Aiming*

10       The second element of the *Calder*-effects test "requires that the defendant's conduct be expressly

11   aimed at the forum." *Brayton Purcell*, 606 F.3d at 1129 (citing *Pebble Beach Co. v. Caddy*, 453 F.3d

12   1151, 1156 (9th Cir. 2006)). "[M]ere web presence is insufficient to establish personal jurisdiction."

13   *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (citing *Panavision*

14   *Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d

15   414, 418 (9th Cir. 1997)). However, "operating even a passive website in conjunction with 'something

16   more' — conduct directly targeting the forum — is sufficient." *Rio Props., Inc. v. Rio Int'l Interlink*,

17   284 F.3d 1007, 1020 (9th Cir. 2002) (quoting *Panavision*, 141 F.3d at 1322). In determining whether

18   a nonresident defendant has done "something more," the Ninth Circuit has considered several factors,

19   including the interactivity of the defendant's website, the geographic scope of the defendant's

20   commercial ambitions, and whether the defendant "individually targeted" a plaintiff known to be a

21   forum resident. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011).

22       Plaintiff argues that this Court has specific jurisdiction because Defendants participated in a

23   BitTorrent swarm that resulted in Plaintiff's works being downloaded by users in the Southern District

24   of California. (Compl. at ¶¶ 31-37.) In the Complaint, Plaintiff provides three pages of allegations

25   explaining how the BitTorrent protocol works. (Compl. at ¶¶ 16-37.) However, in none of these

26   allegations is there any explanation of how Does 22, 34 or 35 directly targeted the Southern District of

27   California by participating in the BitTorrent swarm. "BitTorrent [allows] users to share files

28   anonymously with other users. . . . When using the BitTorrent protocol, every user simultaneously

receives information from and transfers information to one another." *Diabolic Video Prods., Inc. v. Does 1-2099*, 2011 U.S. Dist. LEXIS 58351, at *3 (N.D. Cal. May 31, 2011); *see also* Compl. at ¶ 35 ("[E]ach Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions."). Because every user simultaneously receives and transfers information to the other users in the swarm, a participant in the swarm has no control over where he distributes the information; it is automatically distributed to the other users. (*See* Compl. at ¶ 31 ("Once the initial seeder has created a torrent and uploaded it onto a torrent site then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Works) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.").) Where the files get distributed to is controlled by the location of the other participants in the swarm, not by the distributor's conduct. For example, as in this case, if a resident of the Central District of California (e.g., Does 22, 34 and 35) participates in a BitTorrent swarm and a file gets distributed to the Southern District of California, it is not because the Central District of California resident directed the file to the Southern District of California. It is because another person participating in the swarm happened to be in the Southern District of California. Therefore, a participant in a BitTorrent swarm does not "directly target" the Southern District of California, even if he participates in a swarm that results in his files being downloaded to a computer in the Southern District of California. Even taking the allegations in the Complaint as true, Does 22, 34 and 35's mere web presence is insufficient by itself to establish specific personal jurisdiction. *See Mavrix Photo*, 647 F.3d at 1229.

"Moreover, the Court notes that its conclusion is consistent with other district courts that have held that participation in a BitTorrent swarm that results in copyrighted work being distributed to computers in the forum is insufficient by itself to confer specific jurisdiction over a defendant." *Liberty Media Holdings, LLC v. Tabora*, 2012 U.S. Dist. LEXIS 1101, at *12 (S.D. Cal. Jan. 4, 2012) (citing *Berlin Media Art v. Does 1 - 654*, 2011 U.S. Dist. LEXIS 120257, at *4-8 (N.D. Cal. Oct. 18, 2011); *Millenium TGA v. Doe*, 2011 U.S. Dist. LEXIS 110135, at *2-8 (N.D. Ill. Sept. 26, 2011); *On The Cheap, LLC v. Does 1-5011*, 2011 U.S. Dist. LEXIS 99831, at *14 (N.D. Cal. Sept. 6, 2011)). In *Berlin*

1    *Media*, a court in the Northern District of California explained:

2          The Court is not aware of any caselaw that suggests that this Court has personal
           jurisdiction over all 654 Defendants simply because "at least one" of the defendants
3          (unidentified) allegedly happened to download the file at some point during the time
           period in question from a computer located in this District.  As one court in this
4          District noted, the logical extension of such an unprecedented holding "would be that
           everybody who used . . . BitTorrent would subject themselves to jurisdiction in every
5          state."  "[T]his is a far cry from the requirement that 'there be some act by which the
           defendant purposefully avails itself of the privilege of conducting activities with the
6          forum State,' which is the hallmark of specific jurisdiction."

7    2011 U.S. Dist. LEXIS 120257, at *7-8 (citation omitted) (quoting *On The Cheap*, 2011 U.S. Dist.

8    LEXIS 99831, at *4).  Accordingly, the conduct of Does 22, 34 and 35 was not expressly aimed at this

9    judicial district, and Plaintiff has failed to make a prima facie showing establishing that the second

10   element of the *Calder*-effects test is met in this case.  *See Mavrix Photo*, 647 F.3d at 1229; *Rio Props.*,

11   284 F.3d at 1020.

12                    *iii.      Foreseeable Harm*

13         The third element of the *Calder*-effects test "requires that [defendant's] conduct caused harm

14   that it knew was likely to be suffered in the forum."  *Brayton Purcell*, 606 F.3d at 1131.  "This element

15   is satisfied when defendant's intentional act has 'foreseeable effects' in the forum."  *Id.* (quoting

16   *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)).  In a copyright

17   case, it is foreseeable that a defendant will cause harm in a particular forum if the defendant knows that

18   the copyright owner resides in that forum.  *See id.*; *Columbia Pictures*, 106 F.3d at 289 ("[Plaintiff]

19   alleged, and the district court found, that [defendant] willfully infringed copyrights owned by [plaintiff],

20   which, as [defendant] knew, had its principal place of business in the Central District.  This fact alone

21   is sufficient to satisfy the 'purposeful availment' requirement."); *O'Brien v. Nowicki*, 2011 U.S. Dist.

22   LEXIS 71645, at *11 (N.D. Cal. Jul. 5, 2011) (finding third element satisfied where "defendants knew

23   that the harm would take place in California because they knew plaintiff lived there").  Here, Plaintiff's

24   principal place of business is located in the Central District of California (Compl. at ¶ 8), and Plaintiff

25   has made no showing that Does 22, 34 or 35 knew that their actions alleged to have taken place in that

26   judicial district would cause likely to be suffered in the Southern District of California.  Thus, Plaintiff

27   has not made a prima facie showing of jurisdictional facts establishing that the third  element of the

28   *Calder*-effects test – foreseeable effects in the forum – is met in this case.  *See Brayton Purcell*, 606

F.3d at 1131; *Columbia Pictures*, 106 F.3d at 289.

In sum, the Court concludes that Plaintiff has failed to satisfy the second and third elements of the *Calder*-effects test.  Therefore, Plaintiff has not alleged sufficient facts to show that it can withstand a motion to dismiss for improper venue as to the three Doe Defendants with IP addresses outside of this judicial district.

**2.    Misjoinder**

In addition to venue, Plaintiff has failed to demonstrate that its claims against Does 22, 34 and 35 can withstand a motion to dismiss for improper joinder.  Fed. R. Civ. P. 20(a); *see 808 Holdings*, 2012 U.S. Dist. LEXIS 62980, at *22 (citing *Celestial, Inc. v. Swarm Sharing Hash*, No. cv 12-00204 DDP (SSx), 2012 U.S. Dist. LEXIS 41078, at *7 n.3 (C.D. Cal. Mar. 23, 2012)).  "Although the Ninth Circuit has not ruled on whether permissive joinder is proper in cases where Doe defendants collectively download and upload the same file using BitTorrent technology, several recent district court cases in the circuit have found joinder improper."  *Id.* at *21 (citing *Celestial*, 2012 U.S. Dist. LEXIS 41078, at *7 n.3).  "In its conclusory pleading and motion, [Plaintiff] has not established that the Complaint can withstand a motion to dismiss for the misjoinder of . . . out-of-district Doe Defendants."  *Id.* at 22.

**D.    Cable Privacy Act**

Finally, the Court must consider the requirements of the Cable Privacy Act, 47 U.S.C. § 551.  The Act generally prohibits cable operators from disclosing personally identifiable information regarding subscribers without the prior written or electronic consent of the subscriber.  47 U.S.C. § 551(c)(1).  A cable operator, however, may disclose such information if the disclosure is made pursuant to a court order and the cable operator provides the subscriber with notice of the order.  47 U.S.C. § 551(c)(2)(B).  The ISPs that Plaintiff intends to subpoena in this case are cable operators within the meaning of the Act.

**V. CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Leave to Serve Third Party Subpoena Prior to a Rule 26(f) Conference is **GRANTED IN PART** and **DENIED IN PART**.

Plaintiff has failed to make a sufficient showing to satisfy the three-factor test as to Doe Defendants 22, 34 and 35 and Plaintiff's Motion as to these three Defendants is **DENIED**.

12cv1135-LAB (DHB)

Plaintiff has made a sufficient showing to satisfy the three-factor test for the remaining thirty-two Doe Defendants.  Plaintiff's Motion is therefore **GRANTED IN PART** as to all Doe Defendants except Does 22, 34 and 35.  Plaintiff may serve subpoenas on the ISPs for the thirty-two Doe Defendants with addresses in this judicial district, seeking the <u>true name and address</u> of those individuals with the IP addresses located in this judicial district (i.e., Does 1-21 and 23-33) as set forth on Exhibit A to Plaintiff's Complaint.  That information (i.e, the subscriber's true name and address) should be sufficient for Plaintiff to be able to identify and serve the Doe Defendants.  The Court finds it is not necessary for the ISPs to release Defendants' telephone numbers, e-mail addresses or MAC addresses.  Thus, Plaintiff's request to seek early discovery regarding Defendants' telephone numbers, e-mail addresses and MAC addresses is **DENIED**.

Each subpoena must provide a minimum of <u>forty-five days'</u> notice before any production and shall be limited to one category of documents identifying the particular subscriber or subscribers on the "Hit Date (UTC)" listed on Exhibit A to Plaintiff's Motion.  (ECF No. 1-1.)  The requested information should be limited to the name and address of each subscriber.  Any subpoenaed third party may seek a protective order if it determines there is a legitimate basis for doing so.

The ISPs shall have <u>fourteen calendar days</u> after service of the subpoenas to notify the subscribers that their identity has been subpoenaed by Plaintiff.  Each subscriber whose identity has been subpoenaed shall then have <u>thirty calendar days</u> from the date of the notice to seek a protective order or file any other responsive pleading.

Plaintiff shall serve a copy of this Order with any subpoena obtained and served pursuant to this Order to the named ISPs.  The ISPs, in turn, must provide a copy of this Order along with the required notice to any subscriber whose identity is sought pursuant to this Order.

No depositions or written discovery to Defendants are authorized at this time.

**IT IS SO ORDERED.**

DATED:  June 28, 2012

DAVID H. BARTICK
United States Magistrate Judge

12cv1135-LAB (DHB)